Case 4:19-cv-04320   Document 1-1   Filed on 11/04/19 in TXSD   Page 1 of 12

9/9/2019 2:41 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36640654
By: D Burton
Filed: 9/9/2019 2:41 PM

NO. _____

| STEPHANIE MCAFEE, | § | IN THE DISTRICT COURT |
|---|---|---|
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | |
| U.S. DEPARTMENT OF VETERAN | § | _____ JUDICIAL DISTRICT |
| AFFIARS, MARIA LEWIS WILSON, | § | |
| KENDRA PRICE MAYS, CHRISTOPHER | § | |
| SANDLES, CAROYLN BALDWIN | § | |
| *Defendants.* | § | |
| | § | OF HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Stephanie McAfee ("Plaintiff" or "Ms. McAfee"), files her Original Petition, complaining of Defendant U.S. Department of Veteran Affairs, Michael E. DeBakey VA Medical Center (hereinafter referred to as "VA" or "Defendant").

### I.
### DISCOVERY CONTROL PLAN LEVEL

1.  Plaintiff intends to conduct discovery in this action under Level 3 pursuant to Tex. R. Civ. P. 190.2. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff seeks monetary relief in excess of $200,000.00 not to exceed $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees and judgment for all other relief to which Plaintiff is justly entitled. Plaintiff expressly reserves the right to amend this Rule 47 statement of relief if necessary.

### II.
### PRELIMINARY STATEMENT

2.  Stephanie McAfee is an African American female veteran who suffers from multiple service-related psychological disorders, including Post-Traumatic Stress Disorder, Depression and Anxiety. She has worked at the Michael E. DeBakey VA Medical Center in Houston, Texas, for more than 20 years. Ms. McAfee's disability status was established and well-known among her

1

colleagues. Throughout her time at the VA, she maintained excellent performance ratings and was regarded as a dedicated and outstanding employee, that is until she encountered undue push-back and denials regarding her overtime requests, medical leave requests and requests for reasonable accommodations due to her disability and filed EEO complaints against her supervisors. In retaliation, Ms. McAfee's supervisors Maria Lewis Wilson, Christopher Sandles, and Carolyn Baldwin began levying threats, lowering her performance ratings, denying her promotions and blatantly harassing her.

## III.
## THE PARTIES, JURISDICTION, AND VENUE

3. The Plaintiff, Stephanie McAfee, is a natural person residing in Pearland, Texas. Ms. McAfee has standing to file this lawsuit.

4. Defendant, Maria Lewis Wilson, is an individual who, upon information and belief, resides in Harris County, Texas. Wilson is an agent and servant of Defendant, Department of Veteran Affairs. At all times relevant hereto, Wilson was the Manager of Patients Access Center (PAC) department, at VAMC and was acting within the scope of her authority and under the color of statutes, ordinances, regulations, policies, customs, practices and usages of Department of Veteran Affairs.

5. Defendant, Carolyn Baldwin, is an individual who resides in Harris County, Texas.

6. Defendant, Maria Lewis Wilson, is an individual who resides in Harris County, Texas.

7. Defendant, Kendra Price-Mays, is an individual who resides in Harris County, Texas.

8. Defendant, Christopher Sandles, is an individual who resides in Harris County, Texas.

9. Defendant United States may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the United States Attorney John Malcolm Bales, United States Attorney for the Eastern District of Texas, by certified mail, return receipt requested at his office at 350 Magnolia Ave., Suite 150, Beaumont,

2

Texas 77701 or wherever found, and by serving a copy of the Summons and Complaint on William P. Barr, Attorney General of the United States, by certified mail, return receipt requested, at the Attorney General's Office: ATTN Civil Process Clerk, 10th and Constitution Avenue, N.W., Washington, D.C. 20530 or wherever found.

## IV.
## JURISDICTION & VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the ADA, Title II of Civil Rights Act of 1964 and Texas Labor Code § 21.051. [This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).]

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants resides in this district and all defendants reside in Harris County; 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district/28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district/28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## V.
## CONDITIONS PRECEDENT

12. On March 11, 201, December 23, 2015 and April 26, 2016, Stephanie McAfee timely filed charges of disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

13. On or about June 10, 2019, the EEOC issued Stephanie McAfee a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Stephanie McAfee has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

3

14. Contemporaneously with the filing of this Complaint, Stephanie McAfee has mailed a copy to the Texas Workforce Commission, thereby satisfying the notice requirements of the applicable statute(s).

## VI.
## FACTUAL BACKGROUND

15. Stephanie McAfee began working for Michael E. Debakey VA Medical Center ("VAMC") in June 1998 as a file clerk in the Records Department. She later promoted to Lead Medical Support Assistant (GS-679-06/Step 5).

16. During her tenure at the VAMC, Stephanie McAfee's work performance met or exceeded Defendants' legitimate expectations. Stephanie McAfee's reviews of her performance were consistently "Outstanding." However, that changed after she filed an EEO complaint against her supervisors.

17. On March 11, 2013, McAfee filed an EEO complaint against her supervisors, Kendra Price Mays ("KPM") for denying her overtime request. Shortly after filing the complaint, McAfee noticed several changes to her job duties, differential treatment and adverse employment actions taken against her by her Manager, Maria Lewis Wilson (MLW), and KPM. So much so, that in her amended EEO complaint, McAfee complained that MLW had undertaken a course of conduct that would likely result in McAfee receiving a lower performance rating, "Fully Successful," instead of "Outstanding"–that she received for the previous six years.

18. Namely, on April 29, 2013, MLW exclusively prevented McAfee from attending a required staff meeting that was not only directly related to her position, but also served as an opportunity for employees to voice concerns or issues they were having regarding their work-environment.

19. MLW also denied McAfee's request for access to Employee Assistance Program ("EAP"), a program to provide assistance counseling for employees in need. Although the EAP guidelines entitle an employee to seek assistance on official time, when McAfee requested to utilize the EAP,

4

MLW advised her that she would have to use one (1) hour of Leave or Leave Without Pay in order to access the EAP. As MLW knew that McAfee did not have any Leave to use, and that she was entitled to access the EAP without using Leave, this was done solely for harassing and retaliatory purposes. Further, McAfee learned that MLW did not deny or require any other employees in her unit to use Leave to access the EAP.

20. On May 1, 2013, she was not selected for a Medical Administrative Specialist, G-11, position by MLW and KPM. MLW advised McAfee and others within her unit to prepare for the position for months prior to the selection, however, the position was never announced, as it was originally purported to have been, and consequently, McAfee never had an opportunity to apply for the position. The position was filled under special authority with MLW and KPM as the interviewers and with MLW having final selecting authority. MLW and KPM caused the position to be unannounced in order to prevent McAfee from applying–in retaliation to her prior EEO activity.

21. On or about May 22, 2013, MLW and KPM denied McAfee access to information she required to complete her assigned duties. Namely, McAfee was denied access to the Medical Administrative Assistant ("MAA") program, which she had access to prior to KPM's hiring and was continued thereafter. It was only after McAfee's EEO activity that her access was denied.

22. Further, MLW and KPM denied McAfee from participating in Bed Control Meetings. McAfee received an email meeting request from a doctor regarding a Bed Control Meeting with a cc to all participant. MLW responds to the email notifying the doctor that McAfee would not be attending the meeting. No other employees were denied participation in the meeting.

23. Also, MLW instructed McAfee to train another employee on how to perform her assigned duties–disrupting McAfee's other assigned work and reportedly done for the purpose of replacing McAfee.

24. As McAfee anticipated due to MLW's change in conduct, MLW lowered McAfee's

5

performance rating from Outstanding to Fully Successful–the lowest rating given to any employee by MLW. Tellingly, McAfee was not advised of any deficiencies in her performance, reprimanded or disciplined. In fact, MLW gave McAfee an Outstanding during her mid-term review. Accordingly, the lowered performance rating was an adverse employment action taken against McAfee due to her prior EEO activity. Even KPM stated that McAfee is an "excellent worker who performs her job well and is a true asset to the PAC (Patient Advocate Center)."

25.    On or about December 3, 2013, MLW did not select McAfee for a Medical Administrative Assistant, GS-7/9, position, although McAfee had more experience and better qualified than the candidate MLW selected. McAfee had two interviews for the position, MLW and KPM participated in both interviews. The second interview was intentionally postponed until after the FY 2013 performance ratings came out, which reflected negatively on McAfee given her lowered rating. MLW lowered McAfee's performance rating in order to deny her the position.

26.    On December 18, 2013, MLW again removed McAfee's access to software necessary for her to perform her duties. MLW admits that she restricted McAfee's access to certain software/folders because she wanted to "safeguard records." MLW further admits that her decision to restrict McAfee's access to computer files was based on McAfee's disability–as detailed in her OWCP narrative.

27.    In November 2015, McAfee's work-schedule was modified without prior notice or consent. McAfee complained and requested that her medical leave requests be reinstated, but they were denied. McAfee informed Baldwin that she was going to file an EEOC complaint as a result of the treatment she was being subjected to.

28.    December 2015, McAfee met with Mr. Sandles He discussed the relationship between Ms. Baldwin and McAfee.  Mr. Sandles and he stated that he wished Baldwin and McAfee could get along and reminded McAfee that he highly recommended her for the newly-created Chief of Inpatient's Ward Administration position.  Sandles then went on to add that he would hate to see

6

something such as this prevent McAfee from getting the position or promotion. Rightfully, McAfee received this as a threat and tried to work things out with Baldwin.

29. Ms. Baldwin never questioned addressed McAfee regarding this matter. Instead, without notice or explanation, Baldwin took away McAfee's timekeeping menu access. After learning that her timekeeping menu access was disabled, McAfee called her ADPAC, Cynthia Peet, and asked if her timekeeping menu had been taken away from her. Peet stated "yes." McAfee asked her why, and Peet replied that "Ms. Baldwin told her to." McAfee then requested to speak with Ms. Baldwin regarding the matter and Baldwin stated that "McAfee was no longer on her Timekeeper's Delegation and she had no need for a timekeeper's menu." McAfee corrected Baldwin–stating that she was still on T&L 255 Delegation, which allows her to perform timekeeping functions. To double-check, McAfee called Payroll Department and spoke with Cynthia Sweet, who confirmed that she was still listed on Timekeepers Delegations, but that "only her "Menu" option had been disabled."

30. Thereafter, McAfee filed an EEOC complaint against Baldwin and requested a permanent day shift as a reasonable accommodation to her military service-related disability.

31. On or about January 22, 2016, the Agency failed to select Stephanie McAfee for a Supervisory Medical Administrative Specialist Position Announcement JP- 16-HRW- *1577057),* which would have significantly increased her pay and advancement possibilities. Instead the position was filled by someone with less seniority and experience.

32. On February 16, 2016, management declined Complainant's request for a permanent day-shift position as a reasonable accommodation.

33. On or about February 22, 2016, Mr. Sandles implemented an improper–and harassing–Personal Improvement Plan ("PIP"). Mr. Sandles instructed Mr. Herrada to document everything McAfee did. Mr. Herrada told McAfee to send him a weekly performance log of her activity. This was not asked of any other employee.

7

34.     The harassment, hostile work-environment and retaliation continued into March 2016, when Mr. Sandles' approved an improper fact-finding conducted by Sangita Shah without allowing McAfee to provide a statement. Mr. Sandles instructed one of his HSS, Sangita Shah, to conduct a fact-finding against McAfee without notifying the Union or interviewing her.  Mr. Sandles accused McAfee of starting a rumor that he and Ms. Baldwin had an affair, which is untrue. However, Baldwin and Sandles had conflicting statements regarding their relationship. Mr. Sandles stated he did not know Ms. Baldwin until she arrived at the VAMC in Houston, but Ms. Baldwin stated she knew him prior to her arrival at the VAMC. Mr. Sandles hired Ms. Baldwin and he was upset because everyone knew he had prior association with her, potentially raising questions about his hiring decision. Mr. Sandles instructed Ms. Shah to reach out to Mr. Wilkerson for his statement. Mr. Wilkerson also stated that Baldwin stated that she had a prior encounter with Sandles–contradicting his story. This is documented in emails.

35.     July 2016, Sandles recommended that the Agency not allow Complainant to travel as part of a facility team to a Dallas, Texas medical center.

36.     November 2016, Mr. James Herrada meet with Mr. Sandles to request McAfee be relocated under his section as an Administrative Officer. Mr. Sandles told Mr. Herrada to speak with Ms. Baldwin and ensure that he locate a PD for a GS-9 grade only–stating: "she won't get a promotion out of this."

37.     August 2017, the Executive Assistant to the Assistant Director, Curtis Bergeron, while trying to convince McAfee to change her *accommodated* shift, threatened her by saying "*if you don't fall in-line, the VA has just become a fire-at-will institution*."

38.     In October 2017, Ms. McAfee was congratulated for receiving a position she applied for but did not receive. Without notifying her, the selection panel, Kendra Wilson-Hudson, Carolyn Collier and Karen Reynard improperly selected another candidate against the express instructions from the Human Resources Department. McAfee was a candidate for the position, but was

8

interviewed and scored by biased or improper selection committee. After she was not selected for a second interview, she requested her score cards completed by the selection committee. She was informed that the score cards were destroyed or discarded. HR mandated another interview process. However, without reselecting a new panel and re-interviewing the candidates, one of the original candidates was selected. McAfee alleges this was done in furtherance of the alleged hostile work-environment, disability discrimination and/or retaliatory she previously complained of.

39. Stephanie McAfee, having been diagnosed with Cancer, Post Traumatic Stress Disorder, Anxiety and Depression, is a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended. As a result of Stephanie McAfee's disability, major life activities, such as **[LIST OF ACTIVITIES]**, are substantially limited.

40. Following her diagnosis, Stephanie McAfee informed her supervisors that she would need a reasonable accommodation consisting of a permanent day-shift, isolated work-area, therapy and time-off. Stephanie McAfee provided Defendant(s) with a doctor's note to support her requests for reasonable accommodation.

## VII.
## CAUSES OF ACTION

### COUNT ONE
### Retaliation Based on Prior EEO Activity

41. Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

42. On March 11, 2013, McAfee filed an EEO complaint against her supervisor, Kendra Price Mays ("KPM") for denying her overtime request. Shortly after filing the complaint, McAfee noticed several changes to her job duties, differential treatment and adverse employment actions taken against her by her Manager, Maria Lewis Wilson (MLW), and KPM.

9

## COUNT TWO
**Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.**

43. Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

44. Prior to the complained of discrimination, Stephanie McAfee was diagnosed with PTSD, Anxiety, Depression and Cancer, making her a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Stephanie McAfee could perform the essential functions of her position with or without a reasonable accommodation.

45. On or about January 2012, Stephanie McAfee notified Defendant(s) about her disability and requested a reasonable accommodation for a permanent day-shift.

46. Defendant(s) refused to engage in the interactive process and denied Stephanie McAfee's request claiming that she was not allowed to have a permanent day-shift.

47. Defendant(s) also [regularly] made discriminatory comments to Stephanie McAfee and her co-workers regarding Stephanie McAfee's disability and requests for a reasonable accommodation. For example, Maria Lewis Wilson told McAfee that she didn't think veterans should be in key administrative position and only in housekeeping or a file clerk position.

48. Stephanie McAfee suffered damages as a result of Defendant('s/s') unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

49. Defendant(s) intentionally violated Stephanie McAfee's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT THREE
**Retaliation in Violation of the Americans with Disabilities Act 42 U.S.C. §§ 12181 et seq.**

50. Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

10

51.     On May 22, 2013, December 18, 2013 and December 21, 2015, Maria Lewis-Wilson, Kendra Price Mays and/or Carolyn Baldwin removed McAfee's access to software or files necessary for her to perform her duties. MLW admitted that she restricted McAfee's access to certain software/folders because McAfee's disability.

52.     Defendant(s) intentionally violated Stephanie McAfee's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

### COUNT FOUR
### Violations of Texas Labor Code § 21.051

53.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

54.     An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1)  fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment;  or

(2)  limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

55.     Defendants engaged in unlawful employment practices when they took adverse employment actions against Ms. McAfee based on her disability and prior EEO activity, depriving her of the conditions and privileges of her employment, which her similarly-situated colleagues enjoyed.

## VII.
## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

a. Accept jurisdiction over this matter;
b. Award Plaintiff for her past and future loss of wages and benefits, plus interest;
c. Award Plaintiff compensatory and punitive damages;
d. Order Defendant(s) to retrospectively instate Plaintiff to a position or pay grade comparable to her current position or, in lieu of reinstatement, award her front pay (including benefits);
e. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and
f. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

**ANDRE EVANS & ASSOCIATES, PLLC**

*/s/ Andre D. Evans*
ANDRE D. EVANS
Federal Bar I.D. No. 2553080
Texas State Bar No. 24082970
3003 South Loop West, Suite 108
Houston, Texas 77054
T: (832) 941-1282
F: (832) 778-8353
andre@attorneyandreevans.com

**ATTORNEY FOR PLAINTIFF**